The Honorable, the Judges of the United States Court of Appeals in the 4th Circuit You may be seated In our next case, we have Knockout Holdings v. Kakar Mr. Werner Yes, Your Honor Good to have you with us, Mr. Werner Good to be here. Thank you for having us Good morning, Your Honors. May it please the Court, Paul Werner on behalf of Knockout, also known as Octo Octo brought this lawsuit for defamation against Mr. Kakar because in an effort to kill a billion dollar transaction with IBM he said, Octo's management were liars and lied to him They pushed him out of the company So we're in federal court here under a diversity of jurisdiction? Yes, Your Honor And so your opposing counsel and parties say that we don't have diversity They do, and they're mistaken Alright, tell us why Sure, Your Honor They raised that argument based on some K-1s that Mr. Kakar received about a year before he found this jurisdictional defect And here's the issue Mr. Kakar Does that make a difference? I mean, either we have jurisdiction or we don't have jurisdiction That's true You're right, Your Honor. They're free to raise it at any time However, it does go, in my view, to the merits of the argument because it is belatedly raised when they should have known about it and could have raised it much sooner But to the merits, the reality is this What about the jurisdiction? Do we address it here or do we have to send it back to the district court? Your Honor, I think the court can address it here because I don't think it's very difficult It wasn't raised before It was not raised before We have jurisdiction under Section 1291 of the Code to review a final order That's what we got up here Yes, Your Honor But the district court, the diversity of jurisdiction issue would be something for it, initially, wouldn't it? Your Honor, we point that out in our brief If there are doubts about jurisdiction, they can and should be treated in the district court as an initial matter However, because they were raised here in this court, this court can entertain them as an initial matter and can decide them here based on the evidence that's of record And I was just getting to that The evidence of record So we would have to weigh the evidence and in effect discount the K-1s which indicate that this entity would have still been a Maryland resident which would destroy jurisdiction if that's accurate Your Honor, if the court believes that it needs to weigh evidence, I agree with you It needs to go back to the district court Is that evidence even properly in this record? There is sufficient evidence in this record for the court to determine jurisdiction Well, I mean, the K-1s, they're attached to your brief, aren't they? They're not attached to our brief, they're attached to our opposition's brief They're attached to a brief Yes, and the court admitted them into the record They're an exhibit to a brief Pardon? This court admitted them into the record, so they are part of the record Well, there was an order that did, but they weren't in the record They were not in the record in the district court And there was no motion made under Rule 10e of the Rules of Appellate Procedure to supplement the record Our clerk entered an order letting you attach them to the brief That attaches them to the brief You're right, we did attach them to our brief In fact, we opposed their motion to attach them to their brief But they're attached to a brief They are, you're right And the brief's based on the record made in the district court The briefs are based on That's the way the process is here And if there's something missing from the appellate record There's a rule, I said, Rule 10e That authorizes a proper motion to supplement or correct the record And that rule was not utilized here You're right, Your Honor And again, if there are questions about diversity of jurisdiction Those are properly treated in the district court And we note that in our brief However, based on the record before this court The court can assure jurisdiction based on two things One is the IBM transaction that is at the record of JA-791 Which makes clear that Mr. McCarr is not a member of Knockout Holdings At the time that we filed this lawsuit and any time thereafter Also, I would point the court to the records around the repurchase of Mr. McCarr's shares Which are 752 through 762 of the record Which indicate and make clear And there's no disputing this in the record before this court That his shares were entirely extinguished more than a year Before this litigation was filed Now, he does point to certain K-1s And the K-1s are important for this court to understand But all they reflect is an economic interest Not a membership interest And we identified the relevant tax laws It's not a question of fact though Assuming it's properly before the court It is not a question of fact It's a question of law We pointed to the IRS regulations of 1.736 and 7.61 That indicate what is going on here with respect to the K-1s The K-1s reflect a profits and loss interest A capital interest And the New York State one, as I took it for 2023 Indicated a continuing ownership Which may or may not be correct But while there could be an economic interest Under the partnership rules, I grant you that Could also very well be a pure membership interest And I think the point is we don't know at this point Your Honor, there cannot be a pure membership interest Because if you look at 7.91 There is no equity held by the defendant in this action In the plaintiff That had been extinguished And again, I point to The K-1s say there is equity The K-1s say that because it's a quirk of tax law Even when a member's interest has been extinguished It's still reflected for purposes of taxes Until that economic interest has been fully redeemed It has not been fully redeemed here Because there remains a note outstanding For the purchase of Mr. Kakar's shares That he has not fully redeemed That is what is reflected in the K-1s I understand if there's a question of fact around that And this court isn't comfortable determining that on this record Didn't the Delaware court find there was a disputed issue of this fact In the state court proceedings? Yes, so far the Delaware court has held that Octo knockout Properly triggered its right to repurchase Mr. Kakar's shares There remains a question around whether there was a breach One way or the other with respect to that repurchase However, no matter how that legal issue is determined The shares have been extinguished So it's a breach of contract It does not trigger any default or change In his ownership of the shares The shares have already been extinguished It becomes a matter of breach And it becomes a matter of damages In fact, we know that to be the case Because the estimated damages are already in escrow With the Delaware court around that share repurchase I'm happy to continue to talk about jurisdiction If there are further questions Otherwise, I'd like to move to the merits Go right ahead Okay, with respect to the merits The district court simply got it wrong And in doing so announced and applied a troubling rule That IBM would take Mr. Kakar's statements with a grain of salt Because they were not dispassionate or impartial In reaching that conclusion The district court applied the wrong law Potomac Valve Which was essentially overruled by the Supreme Court and Milkovich As this court recognized in subsequent decisions like biospherics All of the current law Milkovich, biospherics and other cases from this court And the Virginia Supreme Court Make clear that when assessing whether a statement is actionable The words matter most You look at the language, you look at the context But fundamentally you are assessing the words To determine whether or not they are verifiable Whether or not they are provable Biospherics, I read biospherics as pretty consistent With what the district court did here First you ask the threshold question Is it verifiable or not And then both Potomac Valve And the decision we're looking at here And biospherics say even if it is verifiably true or false Depending on the context it may still be opinion So I'm not really seeing where there was kind of a legal error here Well Judge Harris I think the court in biospherics Looked both at the words as well as the context But the words and the context there In that case the court was assessing Are very different from the words and the context here Well I know but your threshold argument is that Wow the district court just applied completely the wrong standard And I take the point that the district court Cited Potomac Valve instead of biospherics As it should have But I don't see the district court applying A standard any different From what we applied in biospherics But I want to give you a chance to tell me If you think there was sort of That this is not just semantic That there was a substantive failure To apply the right standard Your honor I think the difference is Is really the frame of reference In biospherics and as the court in Milkovich said You look at the context to assess Whether the context actually negates Whether the words can be taken seriously as verifiable And in biospherics of course The court found that they did Because the words themselves Also were cheeky They were tongue in cheek They were cute There were plays on sugar and the like And the court ultimately held that This is a breezy stock tip In a stock picking magazine Unlike in Milkovich Where you have accusations That a wrestling coach perjured himself In a serious article in a newspaper Or even like in Potomac Val Where you have a competitor's newsletter There where Judge Wisdom recognized That yes these may be verifiable in some sense But no one is going to take them seriously Because they are in the heat of conflict and competition In a competitor's newsletter Those circumstances are very different From the circumstances here The words that Mr. Kakar used Took direct aim They were black and white Octo lied Octo pushed me out Octo was not honest Octo cheated me out of shares And the like And Octo lied to IBM And has secrets And will lie to IBM And not honor its promises to IBM Those are black and white statements Said for the factual statements That they were And they were in a serious context They were intended to disrupt and undo A billion dollar transaction with IBM They were made by somebody who was a Senior executive with the company He was an insider He was a shareholder And a prior shareholder And an owner And they were made in the context again In where he was already filing lawsuits He had an interest And he had inside information And he was sharing it and working his way Up the management chain at IBM In an effort to get to somebody Who could hear him out And undo the transaction Those facts are The comments or statements That are attributed to Mr. Kakar Don't seem to me to be that different From any number of pleadings That you would see in situations like this Where there's some business type divorce And it's concerning that Following your reasoning You could turn almost every Dispute like this Into a defamation claim Well of course you do There is a privilege for litigation That applies in the context of Pleadings made with courts But the statements that he made Were not I have alleged they breached a contract That's a far cry from what he alleged here What he alleged was that they lied That is a direct aim At Octo's reputation and character And within the heartland Of defamation claims Whether it's said or repeated In a lawsuit Is irrelevant That freestanding on its own And there's no case law That's suggesting That simply because you say something In a lawsuit And then repeat it outside of litigation That it can't be defamatory But here The allegations that he made Don't simply track The allegations that he made In his complaints His complaints talk about Breaches of contract They talk about equity They talk about the share repurchase They don't say That Octo lied to me Octo lied to me Is a core defamation statement Whether it's made in a lawsuit Or otherwise But here it's very different So it's not It's not simply like This is a lawsuit That we are challenging The statements that he made Against us To bring legal claims These are statements that he made To senior executives At a counterparty For a billion dollar transaction In an effort to sink the deal Your honor I'd like to touch on a couple other Points that were raised By my friend on the other side of the aisle In their brief Really for the first time As alternative grounds One argument that they make Is that Octo failed to allege Or prove the exact words That's an argument That this court And district courts Throughout the circuit Have rejected Repeatedly And Virginia courts Have rejected too Rule 8 Governs the pleading standard We are not obligated To either prove Or plead The exact words That Mr. Kakar said However Even if the court were To import Virginia law Into rule 8 Which it shouldn't do We have proven More than sufficient Words That Mr. Kakar said That are defamatory About our client And I'd point the court To JA 200 through 209 And that's the deposition testimony Of Ms. C.C. DeCamp Where she No fewer than 8 times Says that Mr. Kakar Told her That Octo Lied Those are more than sufficient words Even if the Virginia standard applied Which it probably does not Another argument that they raise Is this Over concerning Were the statements really Over concerning Octo Well The record makes clear There's no mystery Around who Mr. Kakar Was talking about He was talking about Octo's management Ms. DeCamp Also recognized that At JA 08 Where she says Octo leadership There's no question Who Mr. Kakar was talking about He was talking about IBM's counterparty And he was talking about IBM's counterparty To IBM executives All of them Perfectly well understood That Mr. Kakar Was talking about The party Whom they were doing A billion dollar deal with And that was Octo And its leadership Which are housed In the plaintiff Knockout Lastly Let me just note In terms of the declaratory Judgment It should go the way As our claim It should be reinstated As well Because we do seek Perspective relief Around the party's Rights and obligations Happy to answer Any further questions Your honors You've saved some time Thank you Mr. Rainsbury Good morning May it please the court Joe Rainsbury For the Aptly Senator Kakar I will Address the Jurisdiction Argument promptly But first I want to correct A couple things From the presentation Of my colleague Across the aisle There is no evidence That Mr. Kakar Ever said The word liars There is no evidence That he said The word liars       That Octo Whether Octo Platform Or Octo Consulting Cheated him These were Inferences That Mr. Kamp Drew from What Mr. Kakar Said And we don't know What Mr. Kakar Said And that is really The fundamental problem Of this case And I Need to remind The court That this was before The court On The district court On summary judgment So They had An obligation To come forward With evidence And it is part Of Virginia's Substantive Defamation Law That you have To prove The exact Words So this isn't A pleading Problem This is a Substantive Problem With their Defamation Claim Now With the Subject matter Jurisdiction Question I know The court Has concerns And I will tell The court That this is not An argument We want To raise We want To end This case To And we Think our Arguments Are strong And we Would like The court To dismiss Or to  The dismissal With prejudice But there Is a Concern You have Raised This question We have Raised Because we Have to Your honor As an Officer Of the Court We have To raise The issue So what Puts The K-1s Properly Before us Well At any Time A party Has to Raise A problem With Jurisdiction And this Was not Part of The  Court Record So I Don't Think It was Properly Supplemented Or corrected This is Something That frankly It occurred To us Only while We were Making an  In the Delaware Case We were Arguing That this Is an Exact Argument And Then Sometime When we Were in Perhaps September The Penny Dropped You Had The K-1s In the Delaware Case We Did I Think Discovery Closed Right Around The Time The  District  Issued Its Opinion In This Case So we Had Them But The Penny Didn't Drop Until August Or  I Apologize For That But I Mean It  I  That     Want                      Some way or another, whether they're here properly or not. These these documents. You got these documents. Do we have it? We have authority to remand it for a jurisdictional inquiry. We could that that might be a that might First of all, we're not asking you the court to do. We're just saying that this is a problem. I'm asking you what to do. You're a lawyer. I understand that. And you're the one started this up. Yes. One of the files papers. So so there's And the court filed the papers with your With your brief. Your brief is here. It's got an exhibit To it. Yes, which aren't in the record properly. I don't think It's not in the district court record, but they're here. Yeah, there are there are Items in the district court record that go to the same question. And for example, what are those? There was the the attachment to the April 15th letter Has the it Has a copy of the operating agreement and the operating Agreement says what's what's the April 15th Letter? I'm sorry. The April 15th letter is a saying is letter saying we're we Intend to repurchase your shares. All right. OK, but there's No evidence that the shares ever were repurchased and they weren't And there's no evidence that the shares are ever canceled. There's No evidence that there was ever there was ever any transfer of shares By Mr. Kakaar back to the company. So and the Delaware court didn't decide Did not decide that issue. Correct. Right. Is it still Before the it is still before the Delaware court. I think trials in September So so Our point is basically that there's no dispute About the authenticity of these K1s. What these K1s say is that Mr. Kakaar is A member. They raise This this this separate IRS regulation that concerns retirement Or death of a partner. That's not what happened here. This concerns a repurchase Of shares pursuant to the operating agreement But there's no evidence that any money has changed hand or that the shares Have been returned or canceled. So just because We think that the court can determine this because it's simply A legal question based on Documents of undisputed authenticity. I mean, the court could send it back As well, but there would just be The district court would be presented with the identical legal argument. All right. Well, I would with the court's permission I'd like to turn to some of the defamation points Raised by opposing counsel. We submit The court should on merits affirm the district Court's dismissal of the defamation claim And again, this this defamation claim The issues rose in the context of a summary judgment motion But nearly all the evidence of the defamation Is missed the camp's testimony. And that's at J.A. 197 Through 215. And I urge the court to Reread that and to see whether or not this would Amount to defamation under Virginia law. Now, law of defamation is well settled. I mean The Supreme Court of Virginia said you need An inducement, a colloquium, and an innuendo. Basically You need to know what was said. You need to know Who it was said about. And you need to know what was meant By it. And knockouts Defamation claim fails on all three points. I mean, most fundamentally they can't say What Mr. Kakar said because their only evidence is What Mr. Camp's deposition testimony and she doesn't remember what he said She just remembers the gist of it. They can't say Who it referred to. They say OCTO. Well, there are two different OCTOs There's OCTO Platform, which is who they Represent. But then there's OCTO Consulting Which is the entity that IPM purchased. So they can't bring A defamation claim on behalf of OCTO Consulting So it really does make a difference who Mr. Kakar Was supposedly talking about. And Mr. Camp doesn't know. She didn't even know the difference between these entities. So she couldn't possibly know Who he was talking about. And then the third problem is Well, what was meant by what Mr. Kakar said? Was he just voicing his unhappiness, his opinion That he had been unfairly treated and that he has a valid legal Claim, which is under Virginia law opinion Under federal law, under the First Amendment law, just opinion Or was he saying something substantive? Now the district court Resolved the issue on the first question. And Probably the most straightforward one. You just look at the context. I mean you read Mr. Camp's statement about the call And the context is clear. This is a guy who Was kept completely out of the loop of this big purchase Even though he was a significant shareholder of OCTO Platform. He learns of it and he's shocked Because he knows he's got a big lawsuit Against these guys, OCTO Platform That is. And he is just astonished That this transaction could go forward with IBM's knowledge Of that litigation. So his inference Is well, they must not know about it and so They must not have been told about it. And all That is clear from the context of what Ms. DeCamp says. That's what She says he called her about. And with respect to the claims that Mr. Kakar implied that OCTO, whoever that OCTO was Cheated him. And again, the word cheated Was not Kakar's word. It was not DeCamp's word. It was Just counsel's word in a question. The context of that makes it clear that he is simply stating His legal opinion. I mean he was promised certain things under these Agreements and he claims that they didn't honor their agreements. And he's upset about it. And Virginia law is clear. If you look At the Shaker case, one of the most recent Virginia Supreme Court cases On defamation, it says, you know, a complaint about A statement that somebody has violated an easement or violated a contract Or done something of that sort is not the sort of statement that has the requisite Defamatory sting. That could be a defamatory Statement. So For all these reasons, we submit that the district court Properly looked at the context Of the statement and properly Determined from that context that Mr. Kakar was simply Stating his opinion and that these statements were not defamatory And that because the Statements themselves are, there is no evidence of what he said That he couldn't, I mean, for this alternate reasoning That Octo could not establish that Mr. Kakar Defamed them. And so for all those reasons We respectfully request the court, you know, either Dismiss this action for lack of subject matter jurisdiction Or in the alternative, affirm the decision below. Thank you. Thank you very much, sir. Mr. Warner. Just a couple points on rebuttal. Going back to the question about Jurisdiction. If the court has doubts about jurisdiction The proper approach for this court to take is a limited remand back to the district Court for assessment of jurisdiction and determination. Assuming there is Jurisdiction, then the appeal can go forward on the merits. If there isn't Jurisdiction, then as we offered in our brief, the appropriate approach is for The district court's judgment to be vacated. I'll reiterate again that there is evidence in the record As it stands showing that Mr. Kakar's shares were repurchased. That's JA-755. The K-1 reflects that repurchase. If you look at the 2002 K-1 that's attached to the brief, which Admittedly is not properly in the record at this point, it shows that Mr. Kakar's shares Were repurchased for $28 million. That's the same price that's in the Note. And then if you look at 791, which is the deal documents For the IBM transaction, there is a capital table provided that Shows all of the membership interest of all the members of the LLCs And you will note that Mr. Kakar's holding company, Seva Holding, is not Among them. That is because his shares have been Extinguished. And they will never be returned because The value of Knockout Holding has effectively been reduced To cash as a result of the IBM transaction. That is why In the Delaware litigation, the value of Mr. Kakar's former Shares have been escrowed. If he prevails in that case, Which he shouldn't, he would receive cash. He would not Receive shares. His shares are gone forever. And you didn't hear Our opposing counsel argue otherwise. That is enough to provide This court to have jurisdiction, but if there are doubts, the case should go back on a limited basis. So what did the Delaware court decide To date? So to date, it decided that under The deal documents between Mr. Kakar and Knockout And various other entities, Knockout had the right to repurchase His shares and it properly exercised that right On Mr. Kakar defaming Octo Under the terms of the agreement. So, so far, the right has been Triggered. The only thing remaining for the Delaware court to determine is whether That was done correctly or not. And whether it was done correctly or not Whether the repurchase was done correctly. Whether the repurchase was actually carried out Consistently with the terms of the agreement. And this is what I was getting at earlier When I said it's really just a breach and damages question. The shares are gone. We had a right to repurchase them. The Delaware Court has determined already we had that right And we properly exercised that right. The only remaining question is did we go through the Procedural rigmarole to actually carry that out correctly. If we didn't Then that goes where it goes. And if we did, then we did. But whether the district court rules one way or the Delaware district court rules one way or the other On that doesn't matter for jurisdiction purposes here. The shares Are gone. So you don't see any issue preclusion Problem coming out of the Delaware court? No. They're distinct. If I can just make a couple points getting Back to the merits discussion we were having. And there's I too hope the court reads the joint Appendix. I'm sure it already has. But just I will call the court's attention to a couple Statements in Mr. Camp's testimony. J.A. 200. They Were not truthful individuals. J.A. 202 Sonny did share concerns that the Octa about the Octa Team being truthful. J.A. 207 I recall more. They lied to him. They Lied to him. They were there was lying involved Those are the very statements that the Milkovich court Held are defamation and are actionable There you will recall that the Supreme Court says in my Opinion Jones is a liar is an actionable statement They're they're not even couched as opinions here. They are Mr. Camp is simply reciting what Mr. Kacar Told her. But doesn't she also say and this is what the district court Relied on. I thought that she understood him to be describing his litigation Claims against the company. That was the Context that she understood it. He's describing why he's suing And what he's suing on. Her discussion is not just in the context of The litigation. Of course, the litigation is a backdrop that is going Going on. And that is something that he was insistent on trying to bring to IBM's attention but was not just about The allegations of the litigation. But that was as she understood It. The context of the conversation was that he's In litigation and I'm hearing why there's nothing in that context That that negates the seriousness of what he was saying in terms of It being factual and verifiable. It's not like like biospheres Where it's just a breezy stock tip. It's not like Potomac valve where this Is just a competitor trashing another competitors testing in their Own company newsletter. This is a former senior executive board member And former shareholder talking about his experience with Octo leadership and saying they lied. In your words, trashing the company With whom he's in litigation. That does seem It seems like the district court has at least a serious Point here that given the context one might understand That these are legal opinions. We don't think that that Includes all of her statements and we don't think that that encompasses All of what she recited that Mr. Kekar told her. And I think If you read the deposition fairly read, it's it's wide ranging And she does talk about the litigation, but she also talks about Mr. Kekar Sharing his experience with the Octo. So is it fair to say that you're Where you think the district court went wrong? I mean, you talk in your brief a lot about the legal Standard, but basically you think the district court misread the Deposition testimony that it wasn't really all about It didn't all come within this litigation context. The district court certainly misread the deposition testimony, but that Is not the extent the full extent of the district court's errors. The district court Also applied a precedent that has been overruled by the Supreme Court And pronounced a rule that defamation isn't defamation if it's not Impartial and dispassionate. That's not really how I read it. I read the district Court saying, look, maybe saying these are verifiably True or false statements, but that the context Is a description of ongoing litigation. And because of that A reasonable listener would understand these to be opinion. We don't think there's anything that's in that context that actually negates the fact that He was stating facts. It really comes to how you read the deposition, it seems to me, but you don't have To agree. Okay. Unless there are further questions We will request that the court reverse the district court Or remand back to the district court. Thank you, your honors. Thank you, Mr. Warner. We're going to come down and greet Counsel in this moment, but before I want to explain to the fellows from VMI That we're going to take about a ten-minute break For a conference of the court, and then We'll return to the bench and have a discussion With the visitors if They're interested enough to hang around. We'll come down and greet counsel And then we'll step out.
judges: Robert B. King, G. Steven Agee, Pamela A. Harris